It was also admitted that the deed from Jeffreys to the trustee was publicly read when the land was sold, but the plaintiff insisted that from his ignorance of the forms prescribed for conveyances he was not aware of the defect at that time, nor did he become so until after the contract was executed. The bill prayed an injunction upon a judgment obtained on the plaintiff's bond for the purchase money, and general relief.
The defendant in his answer denied all fraud, and insisted that the plaintiff had bought with a full knowledge of the limitations in the deed to Fenner.
He also averred that he was informed by his counsel, who drew the deed from Jeffreys, that although it was informal, yet that it conveyed a fee simple in the land. This was fully supported by the testimony of his counsel, Mr. Person.
A witness, Mr. Johnson, proved that he had informed both Outerbridge and Fenner after the sale, but before the execution of the deed from Fenner to the plaintiff, and before the latter gave his bond for the purchase money, of the defects in the deed to the trustee.
I accord with my brethren in saying that this contract should be set aside on the ground of fraud; it appearing from unquestionable evidence that both Outerbridge and his trustee, Fenner, knew before the title passed, and before the plaintiff gave his bond, that the trustee could rightfully make but an estate for his life, such being only the extent of his own estate; notwithstanding the repeated (20) declarations made both by Outerbridge and his trustee at the sale, that only such title as the latter had was offered for sale, and the reading the deed aloud to show what that title was, that the bidders might judge for themselves. It is evident that this was understood to relate to the title, and not the quantity of estate in the lands, and that a fee simple was offered for sale.
Morality and good faith should have induced the defendants Outerbridge and Fenner to disclose to Alston, when about to take his bond, the discovery which had been made, for they certainly knew that such information would have produced a total change in his intentions; and that Outerbridge was about to get from Alston the full value of an estate in fee simple, which he knew that Alston thought he was acquiring, when an estate only for Fenner's life was conveyed to him. Upon strict principles of law, even if Outerbridge and Fenner were really *Page 19 
ignorant of the quantity of estate in Fenner, yet as they professed to sell and did contract to sell and estate in fee, I doubt whether they have in reality complied with their contract, or conveyed to Alston that estate which they had contracted to sell. Fenner had but an estate for life, and could by estoppel only convey a larger estate. By a reference in his deed to Alston, Jeffreys' deed to him became part of the deed to Alston. Thus the matter was left at large, there being estoppel against estoppel.
But relief being clear upon the ground of fraud, I give no opinion upon this latter point.